IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:12-CV-326-FL

| | | |
|---|---|---|
| CURTIS M. DOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Curtis M. Doyle ("plaintiff" or "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 22, 23). Each party filed a memorandum in support of its motion. (D.E. 22-1, 24). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 31 May 2013 Minute Entry). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.      BACKGROUND

A.      Case History

Plaintiff filed an application for DIB on 14 October 2008 alleging a disability onset date of 16 May 2008. Transcript of Proceedings ("Tr.") 21. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 8. On 10 March 2011, a

video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 38-65. In a written decision dated 25 March 2011, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB. Tr. 21-32. Plaintiff timely requested review by the Appeals Council. Tr. 6-17. On 27 September 2012, the Appeals Council admitted additional evidence (Tr. 4, 697-702) and denied the request (Tr. 1-3). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 15 November 2012, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 2), Order Allowing Mot. (D.E. 5), Compl. (D.E. 6)).

**B.      Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. (d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C.      Findings of the ALJ

Plaintiff was 46 years old on the alleged onset date of disability and 49 years old on the date of the administrative hearing.  *See* Tr. 31 ¶ 7.  Plaintiff testified that he has a four-year college degree (Tr. 43), and the ALJ found that he has "at least a high school education" (Tr. 31 ¶ 8).  His past work includes employment as a credit clerk, substitute teacher, and operations manager.  Tr. 30 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability.  Tr. 23 ¶ 2.  At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations:  Crohn's disease, hypothyroidism, chronic fatigue syndrome ("CFS"), depression, and anxiety.  Tr. 23 ¶ 3.  At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings.  Tr. 25 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a reduced range of light work[1]:

---

[1] The Regulations define "light work" as involving:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  The *Dictionary of Occupational Titles* ("DOT") defines "light work" as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of

4

[T]he claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk and sit for 6 hours each in an 8-hour day. The claimant can never climb ladders, ropes or scaffolds and only occasionally climb ramps and stairs. Additionally, the claimant can occasionally balance, stoop and crouch and must avoid workplace hazards. He is limited to simple, repetitive tasks and requires a job with no production quotas or interaction with the general public.

Tr. 27 ¶ 5.

Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing his past relevant work. Tr. 30 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of tobacco sampler and coupon recycler.[2] Tr. 31 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 32 ¶ 11.

## II.    DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence

---

materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited 2 Jan. 2014). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

[2] These are the names for these occupations used by the ALJ in her decision, as well as by the VE in his testimony. *See* Tr. 31 ¶ 10; 62. The formal names in the DOT are tobacco-sample puller and coupon-redemption clerk, respectively. *See* DOT Nos. 529.587-022, 290.477-010.

or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## B.     Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ erred by: (1) failing to find several of his impairments severe at step two; (2) failing to consider all of his impairments after step two; (3) basing plaintiff's RFC solely on her assessment of plaintiff's credibility; (4) giving weight to a

nonexamining consultant's physical RFC assessment of plaintiff; (5) relying on her own medical opinions; (6) failing to indicate the weight she gave to all relevant evidence; and (7) determining at step five that jobs were available to plaintiff. Each ground is examined in turn below.

### C.     ALJ's Alleged Failure to Find Various Impairments Severe at Step Two

Plaintiff contends that the ALJ erred by not finding severe at step two of the sequential analysis plaintiff's alleged insomnia, back pain, status-post disc fusion surgery, right knee fracture, trembling, headaches, and left shoulder impingement.[3] The contention is meritless.

While the ALJ did not find plaintiff's insomnia to be a severe impairment, she did, as indicated, find plaintiff's CFS to be severe. Plaintiff does not challenge that determination. With rare exception, the medical records address plaintiff's insomnia as part of his CFS. Moreover, an excerpt from a medical textbook plaintiff filed with his memorandum indentifies difficulty sleeping and disturbed sleep as symptoms of CFS. Eugene Braunwald, M.D., et al. eds., *Harrison's Principles of Internal Medicine* 1541-42, 1542 (15th ed. 2001) (D.E. 22-2 at 3, 3-4). As defendant notes, the one work-related limitation plaintiff identified with his insomnia is feeling lethargic during the day. (*See* Pl.'s Mem. 10). The ALJ essentially addressed this in her step-two analysis by referring to plaintiff's "fatigue and loss of energy." Tr. 24 ¶ 3. The court concludes that plaintiff's insomnia is subsumed in the ALJ's finding that plaintiff's CFS was severe.

The ALJ discussed at length plaintiff's back pain and back surgeries in her step-two analysis:

> The claimant also testified that he had two prior back surgeries and he has back pain all of the time but gets by because he is able to take breaks. The medical evidence of record confirms surgeries at L5-S1 in 1999 and 2003. The second

---

[3] Although plaintiff does not include the shoulder impingement in his numbered listing of impairments he contends the ALJ should have found to be severe (*see* Pl.'s Mem. 10), he does refer to it in his discussion of the ALJ's severity ruling (*see id.* at 11).

surgery appears to have been successful. The claimant reported 90% improvement in January 2004. In April 2007, the claimant reported a little achiness in his back for several months. X-rays showed a solid fusion at L5-S1 with no major disease at any level. Dr. Rodger concluded that the degree of symptoms did not require investigation at that point and he should adhere to a regular exercise program. In August 2008, he returned to Atlanta Orthopedics with complaints of low back pain. He had good range of motion of the thoracic and lumbar spines. X-rays showed no changes and disc height appeared good. He was urged to continue receiving treatment for chronic fatigue syndrome. (Exhibit 4F) The claimant has not received any additional treatment for low back pain since this time. As such, the claimant's low back pain no more than minimally impacts the claimant's ability to perform work-related activities and is non-severe.

Tr. 25 ¶ 3. This assessment by the ALJ is supported by substantial evidence, including the evidence she cites. *See* Tr., *e.g.*, 271-72, 344, 349, 351-59, 438.

Although plaintiff cites to records of a physician's visit and physical therapy to support his contention, they do not concern plaintiff's back. (Pl.'s Mem. 10-11 (citing Tr. 622-52, 667-68)). Plaintiff did receive physical therapy for his back in 2007, prior to his alleged onset of disability, but after his orthopedist recommended only exercise. Tr. 359.

The ALJ also discussed plaintiff's right knee fracture in her step-two analysis:

The claimant's status/post tibial plateau fracture of the right knee, impingement of the left shoulder and low back pain do not cause more than minimal functional limitations and/or have not lasted or are not expected to last for 12 consecutive months, and have been assessed as nonsevere. In May 2009, the claimant reported that he was experiencing some knee pain and was referred to an orthopedist. The claimant presented at Atlantic Orthopedic in April 2009 and reported that he had fallen off a ladder two weeks earlier and landed on his right leg. X-rays of the knee were unremarkable and he was assessed with right knee sprain versus internal derangement. (Exhibit 12F) The claimant had an MRI of the right knee in May 2009, which indicated a slightly linear component of contusion on the lateral tibial plateau and he was assessed with tibial plateau fracture at eight weeks. He was recommended to avoid impact activities and wear his brace. (Exhibit 11 F) The medical evidence of record fails to indicate that the claimant received any additional treatment or reported any further knee pain after this time. As such, the claimant's status/post tibial plateau fracture is not found to constitute a "severe" impairment because it has not persisted, and is not expected to persist, for 12 consecutive months, as required by 20 CFR §404.1509 and §416.909.

Tr. 24 ¶ 3. The ALJ's analysis is supported by substantial evidence, including the evidence she cites. *See esp.* Tr. 366, 431, 470-71.

As to plaintiff's allegations of trembling, plaintiff argues that the ALJ impermissibly required objective medical evidence of it. The court finds, however, that the ALJ properly evaluated plaintiff's allegations of trembling in her step-two analysis:

> Lastly, the claimant testified that he trembles frequently and has hand tremors that cause him to have horrible handwriting. He also reported trembling in his right leg while driving. The claimant testified that the trembling is related to his chronic fatigue syndrome. There is no support for this allegation in the medical evidence of record. Notably, in January 2011 endocrinology treatment notes document that the claimant had "no tremor of the outstretched hands." Likewise, in July 2010 the claimant had no subjective or objective tremors reported and no tremor of outstretched hands. In February 2010, the claimant did not have any subjective or objective reports of tremor. (Exhibit 24F) As the medical evidence of record fails to document any treatment or complaints of tremors, the undersigned concludes that it constitutes a nonmedically determinable impairment.

Tr. 25 ¶ 3.

As this discussion shows, the medical records affirmatively discredit plaintiff's allegations of trembling by showing that plaintiff did not complain of it (Tr., *e.g.*, 369, 383, 386, 477, 480, 493, 535, 538, 541, 581, 661, 664, 670) or that physicians did not find it upon examination of plaintiff (Tr., *e.g.*, 476, 479, 482, 494, 534, 536, 539, 583, 663, 665). In any event, plaintiff himself testified that the trembling did not prevent him from driving. Tr. 55. Except for claiming that he could not complete a job application legibly (Tr. 55), he also failed to demonstrate that his alleged horrible handwriting significantly impaired his ability to do basic work activities. The court concludes that the ALJ's determination that plaintiff's trembling was a non-severe impairment was supported by substantial evidence.

Plaintiff's contention that the ALJ should have found his alleged headaches to be a severe impairment also fails. While plaintiff did on occasion complain of headaches to treating physicians (Tr., *e.g.*, 284, 369, 383, 462-63), he has adduced no evidence showing that they significantly limited his ability to perform work-related activities. Furthermore, a CT scan of plaintiff's head on 5 December 2008 was normal. Tr. 496. The medical evidence appears to associate at least some of plaintiff's headaches with his hypothyroidism and the medications for it (Tr., *e.g.*, 462-63, 480-82, 485-87, 532-34, 538-40, 658-60), but plaintiff does not challenge the ALJ's analysis of his hypothyroidism at step two (Tr. 23-24 ¶ 3) or otherwise (Tr. 25-26 ¶ 4; 28-29 ¶ 5). The court concludes that the ALJ's determination not to include plaintiff's headaches among plaintiff's severe impairments is supported by substantial evidence.

As to plaintiff's left shoulder, the ALJ found as follows:

> [I]n May 2010 [the claimant] reported a history of difficulty with his left shoulder dating back to January. X-rays of the shoulder were normal and the claimant was given a corticosteroid injection. The claimant also testified that he underwent shoulder surgery but there are not treatment notes to document this. He was sent for physical therapy. The claimant went through two separate trials of physical therapy and was ultimately discharged in October 2010. He had progressed well with physical therapy but still had some difficulty with overhead activity. (Exhibits 24F and 23F) The medical evidence of record does not reveal any further treatment or complaints of shoulder pain since this time. At the hearing, the claimant testified that he had 100% flexibility returned and was able to use his arm to reach overhead. The claimant's left shoulder impingement is therefore not found to constitute a "severe" impairment because it has not persisted, and is not expected to persist, for 12 consecutive months, as required by 20 CFR §404.1509 and §416.909.

Tr. 24 ¶ 3. As the medical records and other evidence cited by the ALJ indicate, her determination that plaintiff's left shoulder impairment was not severe is supported by substantial evidence.

The court therefore concludes that in all respects plaintiff's challenges to the ALJ's severity determination at step two is baseless. It accordingly rejects this initial challenge to the ALJ's decision.

### D. ALJ's Alleged Failure to Consider All of Plaintiff's Impairments after Step Two

Plaintiff alleges that the ALJ failed to consider his insomnia, right knee fracture, back pain, headaches, and hand tremors after step two. The court disagrees.

For example, in her step-three analysis, the ALJ stated expressly:

> [T]he undersigned has considered the combined effects of the claimant's impairments, both severe and non-severe, and has determined that the findings related to them are not at least equal in severity to those described in Listings 5.06, 5.07, 9.02, 12.04, 12.06, 1.02A or 1.02B. In this consideration, the undersigned has specifically considered the cumulative effects of the impairments on the claimant's ability to work. See Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). The undersigned notes that the claimant's impairments cause exertional, postural and mental limitations. Nonetheless, the claimant's impairments are not, in combination, equal to any Listing(s).

Tr. 27 ¶ 4.

In determining plaintiff's RFC, the ALJ also stated:

> The limitation to light work with postural limitations accommodates his chronic fatigue syndrome and his non-severe impairments of back pain, left shoulder impingement and status/post right knee fracture.

Tr. 30 ¶ 5. The ALJ also discussed at length plaintiff's CFS (Tr. 29 ¶ 5) which, as noted, subsumes his insomnia, and his hypothyroidism (Tr. 28-29 ¶ 5) which, as also noted, appears to have an association with his headaches. More generally, the ALJ stated that she determined plaintiff's RFC "[a]fter careful consideration of the entire record" and that she "considered all symptoms." Tr. 27 ¶ 5. Her detailed and comprehensive discussion of the evidence substantiates that these representations are accurate.

The court concludes that the ALJ properly considered all of plaintiff's impairments after step two of the sequential analysis. The court accordingly rejects plaintiff's contention that the ALJ failed to do so.

### E.    ALJ's Alleged Determination of Plaintiff's RFC Solely on the Basis of Her Assessment of Plaintiff's Credibility

The ALJ found plaintiff's allegations regarding his impairments not fully credible. Tr. 28 ¶ 5. Plaintiff states that the ALJ concluded he had the RFC for light work "based solely on the fact that she found the claimant not credible." (Pl.'s Mem. 13). In support, he quotes three sentences from the ALJ's decision:

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment."

> "In sum, the above residual functional capacity assessment is supported by the weight of the evidence of the record. The limitation to light work with postural limitations accommodates his chronic fatigue syndrome. . . ."

(R. 30.)

*Id.*

Plaintiff's contention is not only frivolous, but misrepresents the ALJ's decision. He is quoting the first sentence of the ALJ's statement of her credibility determination and then two sentences from the concluding paragraph of her RFC analysis. Thus, plaintiff omits two pages of detailed discussion of the medical evidence without giving any indication that he is doing so. Indeed, he cites only to page 30 of the transcript, where the second and third sentences appear, failing to indicate that the first sentence appears on page 28. The ALJ's RFC determination is

obviously based not only on her assessment of his credibility, but also detailed consideration of the medical evidence.

### F. ALJ's Allegedly Erroneous Attribution of Weight to a Nonexamining Consultant's Physical RFC Assessment

In a physical RFC assessment completed on 24 March 2009, nonexamining state agency consulting physician N.B. Shah, M.D. found, among other things, that plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently, and could crouch, kneel, and crawl frequently. Tr. 424. The ALJ accorded this assessment and those of the other state agency consultants "significant weight insomuch as they support the ultimate funding of 'not disabled' in this case." Tr. 30 ¶ 5. Plaintiff states that this determination is "obviously untrue and is entitled to no weight." (Pl.'s Mem. 13). The contention is meritless.

Among other flaws in plaintiff's argument, it is based on a mischaracterization of Dr. Shah's determination, namely, that Dr. Shah determined plaintiff to be "*absolutely unrestricted* in kneeling, crouching, and crawling" (emphasis added). In fact, a limitation to "frequently" engaging in an activity means that the activity exists from one-third to two-thirds of the time. *See* DOT app. C § III, def. of "S-Sedentary Work." In contrast, the absence of any restriction would appear to equate to engaging in the activity "constantly," that is, two-thirds or more of the time. *See* DOT app. C § III, def. of "L-Light Work."

Further, nonexamining state agency consultant Robert Gardner, M.D., who completed a physical RFC assessment on plaintiff on 26 January 2010, determined plaintiff to have the same light exertional capacity as Dr. Shah did. Tr. 615. He also found plaintiff able to kneel and crawl frequently, again as Dr. Shah did. Tr. 616. Although Dr. Gardner found plaintiff able to crouch only occasionally, as opposed to frequently as Dr. Shah found, the ALJ credited Dr. Gardner's finding on this ability. Thus, the ALJ herself did not give full weight to all of Dr.

Shah's findings. Plaintiff cites to no evidence in support of his contention that Dr. Shah's assessment was entitled to no weight. As defendant notes, plaintiff himself stated at the hearing, "[p]hysically I think I'm very near ready [to work], mentally, I, I just do not know." Tr. 49. In her RFC determination, as indicated, the ALJ limited plaintiff to only occasional crouching. Tr. 27 ¶ 5.

The court concludes that the ALJ's attribution of "substantial weight" to Dr. Shah's assessment with respect to plaintiff's exertional capacity and ability to kneel, crouch, and crawl is supported by substantial evidence. The court accordingly rejects plaintiff's challenge to this aspect of the ALJ's decision.

### G. ALJ's Allegedly Erroneous Reliance on Her Own Medical Opinions

Plaintiff alleges that the ALJ improperly relied on her own medical opinion, in part, with respect to his Crohn's disease. The ALJ found plaintiff's Crohn's disease to be stable during the period of disability. The court finds no error.

The ALJ's findings on Crohn's disease reflect a proper exercise of her fact-finding function based on the medical records, not development of her own medical opinions, as her own discussion of such evidence shows:

> The medical evidence of record indicates that the claimant's Crohn's disease has been largely stable throughout the alleged period of disability. Treatment notes from Dr. King's office in March 2008 indicate that the claimant's Crohn's disease was in clinical remission. (Exhibit 5F at 6) A colonoscopy from September 2008 revealed active disease only at the anastomosis. Likewise, in January 2009, Dr. King reported that the claimant's Crohn's disease appeared to be well controlled on low dose Asacol and there was nothing on examination to suggest exacerbation of the disease. (Exhibit 6F) In November 2009, Dr. Gonzalez concluded that the claimant's Crohn's appeared to be stable at that point. (Exhibit 19F) Most recently, in February 2010 the claimant reported that his bowel movements were regular with no rectal bleeding or abdominal pain. Dr. King concluded that the claimant was asymptomatic and should continue Asacol and Questran. He recommended a repeat colonoscopy in September 2010 but the claimant testified that he cannot afford this testing. (Exhibit 24F) The medical evidence of record

fails to document any complaints of abdominal pain, diarrhea or constipation throughout the alleged period of disability.

Tr. 28 ¶ 5. The evidence cited by the ALJ constitutes substantial evidence supporting her determination regarding Crohn's disease. *See* Tr., *e.g.*, 316, 345, 372, 387, 488-89, 534, 583, 656.

Plaintiff also contends that the ALJ relied on her own medical opinion with respect to Thyrolar, a medication for hypothyroidism. Plaintiff bases this contention on the ALJ's finding that "[i]n the event that Thyrolar is placed back on the market, previous treatment notes soundly document that the claimant's condition will drastically improve." Tr. 29 ¶ 5. According to plaintiff, the ALJ was implying that "[plaintiff's] disability will go away as long as Thyrolar comes back on the market." (Pl.'s Mem. 19).

This reading of the ALJ's finding is utterly baseless. As detailed by the ALJ, the medical evidence showed that plaintiff did very well when taking Thyrolar and that when Thyrolar was subsequently taken off the market temporarily, he did not do as well. Tr. 29 ¶ 5. But even without Thyrolar, the ALJ determined that the medical evidence "does not indicate that [plaintiff's] hypothyroidism has significantly impacted his activities of daily living," not, as plaintiff argues, that he was disabled. Tr. 29 ¶ 5. The challenged finding is simply an observation that when Thyrolar is again available, plaintiff's condition with respect to hypothyroidism can be expected to return to the high level previously achieved when he was on Thyrolar. The ALJ's findings regarding Thyrolar are supported by substantial evidence.

The court accordingly rejects plaintiff's contention that the ALJ improperly relied on her own medical opinion.

**H.      ALJ's Alleged Failure to Indicate Weight Given to All Relevant Evidence**

Plaintiff argues that the ALJ failed to indicate the weight given all the evidence relating

to his CFS.  The argument is meritless.

In finding plaintiff's CFS to be a severe impairment, the ALJ explained:

> The claimant has also been diagnosed with chronic fatigue syndrome.  In May
> 2008, Dr. Leonard assessed the claimant with chronic fatigue syndrome after the
> claimant reported fatigue and loss of energy.  Since this time, the claimant has
> sporadically continued to report fatigue.  (Exhibit 12F)

Tr. 24 ¶ 3.

In her discussion of plaintiff's RFC, the ALJ made further findings:

> The claimant's chronic fatigue syndrome . . . appears to have improved. In June
> 2009, the claimant reported that his energy was better and sufficient for daily
> tasks.  In September 2009, the claimant was trying to stay active in productive
> ways and had taken a trip to Roanoke.  His energy level was good and sufficient
> for daily tasks.  (Exhibit 20F)  Most recently, in February 2010 the claimant
> reported that he was hoping to find work as his chronic fatigue syndrome had
> improved.  (Exhibit 24F)  The undersigned also notes that the claimant's fatigue is
> likely associated with his hypothyroidism and as that condition has improved with
> medication, so has his fatigue.

29 ¶ 5.   Because of this link between plaintiff's fatigue and his hypothyroidism, the ALJ's

extensive findings regarding hypothyroidism are also relevant to those on his CFS.  *See* Tr. 23-

24 ¶ 3; 28-29 ¶ 5.  The ALJ's discussion manifestly indicated the weight she gave the evidence

of plaintiff's CFS, and her assessment of plaintiff's CFS is supported by substantial evidence,

including the evidence the ALJ cites.

The ALJ did not expressly discuss the purported evidence plaintiff cites in support of his

contention, which he alleges shows plaintiff's CFS was "neither treatable nor manageable":  Dr.

Leonard's reassurances of plaintiff, Dr. Gonzalez's referral of plaintiff to the Mayo Clinic, and

Trinity Wellness Center's lack of "know[ledge of] what to do with him" and its prescription of

anti-depressants and anti-anxiety medicines to him.  (Pl.'s Mem. 14).  But an ALJ is not required

to discuss every piece of evidence. *See, e.g., Lemacks v. Astrue*, Civ. Act. No. 8:07-2438-RBH-BHH, 2008 WL 2510087, at *6 (mag. judge's rep. & recommendation) (D.S.C. 29 May 2008), *adopted*, 2008 WL 2510040 (18 Jun 2008).

The court concludes that the findings the ALJ did make clearly indicate the weight she gave the evidence of plaintiff's CFS. The court accordingly rejects plaintiff's contention to the contrary.

I.      **ALJ's Alleged Erroneous Determination at Step Five that Jobs Were Available to Plaintiff**

Plaintiff alleges that the ALJ committed several errors at step five of the sequential analysis in determining that jobs were available to him. None of plaintiff's contentions has merit.

Plaintiff contends, first, that the ALJ erred by not including in the hypothetical to the VE various problems that the medical records show plaintiff has. In fact, though, the hypothetical must convey to the VE the claimant's functional capacity, not his clinical impairments. *Fisher v. Barnhart*, 181 Fed. Appx. 359, 364-65 (4th Cir. 2006). Thus, a hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). As the ALJ's thorough discussion of the medical evidence, plaintiff's testimony, and other evidence of record shows, the ALJ's RFC determination is supported by substantial evidence. The ALJ's hypothetical to the VE was therefore proper.

Plaintiff also challenges the ALJ's step-five analysis based on his concentration impairment. The ALJ found at step three that plaintiff had moderate difficulties in

concentration,[4] persistence, or pace and limited him in her RFC determination to "simple, repetitive tasks." Tr. 26 ¶ 4; 30 ¶ 5. Plaintiff argues that his difficulties with concentration preclude him from performing the tobacco sampler and coupon recycler occupations, citing to the General Educational Development ("GED") reasoning level for each under the DOT. In effect, he contends that there is an apparent conflict between the VE's testimony and the DOT that the ALJ failed to ask the VE about or to resolve as purportedly required by Social Security Ruling 00-4p, 2000 WL 1898704, at *2, 4 (4 Dec. 2000). The argument fails.

GED is defined in the DOT as follows:

[GED] embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study.

The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.

DOT app. C § III.

The tobacco sampler occupation has a reasoning level of 2, meaning that the person must "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. . . . [and] [d]eal with problems involving a few concrete variables in or from standardized situations." DOT app. C § III, def. of "02 Reasoning Level Develop." The coupon recycler occupation is at reasoning level 3, meaning that the person must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. . . . [and] [d]eal with problems involving several concrete variables in or from standardized situations." *Id.* § III, def. of "03 Reasoning Level Develop." Courts have held, though, that

---

[4] Although plaintiff contends that the ALJ also specifically found plaintiff limited with respect to decision making, she did not.

reasoning levels of 2 and 3 are consistent with an RFC limitation of simple, routine, repetitive tasks ("SRRTs"), which the court deems less restrictive than the ALJ's limitation of "simple, repetitive tasks." *See, e.g.*, *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (holding that level 3 reasoning not inconsistent with ability to perform only "simple" work); *Money v. Barnhart*, 91 Fed. Appx. 210, 214-15 (3d Cir. 2004) (holding that reasoning level 2 not incompatible with an RFC restriction to simple, routine, and repetitive work); *Mason v. Astrue*, Civil No. JKS–10–2157, 2013 WL 990399, at *4 (D. Md. 12 Mar. 2013) ("[C]ourts have routinely found that a reasoning level of three is consistent with limitations to simple, unskilled tasks."); *Clarkson v. Comm'r*, Civil No. SAG–11–631, 2013 WL 308954, at *2 (D. Md. 24 Jan. 2013) ("[C]ourts have consistently found that reasoning levels of two or three are consistent with limitations to simple instructions."); *Clawson v. Astrue*, Civ. Act. No. 11–294, 2013 WL 154206, at *6 (W.D. Pa. 15 Jan. 2013) ("[T]here is no per se conflict between a reasoning level 3 job and the limitation to simple, routine tasks/unskilled work."); *Jones-Reid v. Comm'r of Soc. Sec.*, 934 F. Supp. 2d 381, 408-09 (D. Conn. 14 May 2012) (holding that reasoning levels of 2 and 3 are not inconsistent with a limitation to short, simple instructions), *aff'd*, 2013 WL 1164915 (2d Cir. 22 Mar. 2013); *Carrigan v. Astrue*, Civ. Act. No. 2:10–cv–303, 2011 WL 4372651, at *10-11 (D. Vt. 26 Aug. 2011) (holding that limitation to "routine and repetitive tasks with few, if any, work place changes" not inconsistent with reasoning level of 2; collecting cases); *Burnette v. Astrue*, No. 2:08–CV–009–FL, 2009 WL 863372, at *5 (E.D.N.C. 24 Mar. 2009) (holding that a limitation to SRRTs is consistent with a reasoning level of 2); *Charles v. Astrue*, No. 07-1172, 2008 WL 4003651, at *4 (W.D. La. 7 Aug. 2008) (collecting cases holding reasoning level 2 consistent with a limitation to simple, routine tasks). *But see Yurek v. Astrue*, No. 5:08–CV–500–FL, 2009 WL 2848859, at *9 (E.D.N.C. 28 July 2009) (mag. judge's mem. & recommendation as adopted

in accompanying dist. judge's order of 2 Sept. 2009) (finding level 3 reasoning conflicts with a limitation to SRRTs).[5]  Plaintiff has advanced no convincing reason to deviate from this case law, particularly in light of the VE's statement and the ALJ's finding that the VE's testimony was consistent with the DOT.[6]  Tr. 31 ¶ 10; 63.

Plaintiff also contends that the tobacco sampler occupation has the same DOT trailer as the cashier job the ALJ found plaintiff could no longer perform.  The apparent rationale is that if plaintiff could not do the cashier job, he cannot do the tobacco sampler occupation.  Plaintiff's contention that the trailers for the cashier job and tobacco sampler occupation are the same is simply incorrect.

The trailer to an occupational definition has five parts.  One is the GED scale already discussed.  The trailer also includes the strength rating, specific vocational preparation ("SVP"), date of the last update, and guide for occupational exploration.  *See* DOT app. C.  The parts of the trailer describing the demands of an occupation are strength rating, GED scale, and SVP, which is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  DOT app. C § II.

The relevant parts of the trailers for each the cashier and tobacco sampler occupations are as follows:

---

[5] *Yurek* is distinguishable on, among other grounds, the relative paucity at the time of case law finding no inconsistency between reasoning level 3 and a limitation to SRRTs, upon which the court relied.  *See Yurek*, 2009 WL 2848859, at *9 n.10.  In addition, whereas the ALJ in *Yurek* limited the plaintiff to simple, *routine*, repetitive work, the ALJ here required only that the work be simple and repetitive, and not also routine, indicating a less stringent limitation, as previously noted.   The *Yurek* court cites favorably cases holding that occupations with a reasoning level of 2—the level for the tobacco sampler occupation—are consistent with a limitation to SRRTs, including its own decision in *Burnette*, 2009 WL 86337, at *7.  *Yurek*, 2009 WL 2848859, at *9.

[6] The court also notes that both occupations are considered unskilled work based on their specific vocational preparation ("SVP") level of 2 under the DOT.  *See* DOT Nos. 529.587-022, 290.477-010; Soc. Sec. R. 00-4p, 2000 WL 1898704, at *3; 20 C.F.R. § 404.1568(a) (providing, in part, that "[u]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time").

| Trailer Component | Cashier II (DOT No. 211-462-101) | Tobacco Sampler (DOT No. 529-587-022) |
|---|---|---|
| Strength | Light | Light |
| GED: | | |
|   Reasoning | **3** | **2** |
|   Math | **2** | **1** |
|   Language | **2** | **1** |
| SVP | 2 | 2 |

As this chart indicates, while both occupations are at the same exertional level and SVP levels, the levels in each area of GED are different.

In any event, plaintiff's apparent assumption that identity of trailers signifies that a person who can perform one occupation can perform the other is fallacious. The trailer obviously describes only limited aspects of an occupation. The demands presented by work as a cashier are manifestly different from those presented by work as a tobacco sampler.

Lastly, plaintiff contends that the coupon recycler occupation involves contact with the public, whereas the ALJ found in her RFC determination that plaintiff had to avoid interaction with the general public. In fact, though, according to the DOT, this occupation can entail many tasks that do not involve contact with the public, including: ordering or obtaining merchandise from the stockroom; filling out order forms to request out-of-stock merchandise from the warehouse; and keeping records of transactions. *See* DOT No. 290.477-010. Further, as indicated, the VE testified and the ALJ found specifically that the VE's testimony was consistent with the DOT. Tr. 31 ¶ 10; 63. Again, the court finds no error.[7]

While the ALJ properly determined that plaintiff could perform both the tobacco sampler and coupon recycler occupations, either occupation alone is sufficient to establish the requisite availability of jobs to plaintiff. The VE testified and the ALJ found that in the tobacco sampler occupation there are 430,000 jobs in the national economy, including 17,300 in North Carolina,

---

[7] Additional arguments made by plaintiff in the course of asserting his principal contentions, as reviewed herein, are meritless based on the principles discussed and do not warrant separate discussion.

and in the coupon recycler occupation 15,500 jobs in the national economy, including 190 in North Carolina. The Fourth Circuit has held that a far lower number of jobs is significant for purposes of determining whether there is other work available to a claimant at step five of the sequential analysis. *See*, *e.g.*, *Hodges v. Apfel*, 203 F.3d 820 (Table), at *1 (4th Cir. 2000) (153 jobs); *Hyatt v. Apfel*, 153 F.3d 720 (Table), at *3 (4th Cir. 1998) (650 jobs); *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (110 jobs). The court concludes that the Commissioner committed no error in finding that there exist jobs in significant numbers in the national economy that plaintiff could perform.

## III.   CONCLUSION

For the foregoing reasons, the court concludes that the final decision of the Commissioner is supported by substantial evidence and conforms to the applicable legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings (D.E. 23) be ALLOWED, plaintiff's motion for judgment on the pleadings (D.E. 22) be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 16 January 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after the objections are filed.

This, the 2nd day of January 2014.

James E. Gates
United States Magistrate Judge